IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BRANDON MOYE**,<br><br>        Plaintiff,<br><br>      v.<br><br>**THE CONIFER GROUP, INC.**,<br><br>        Defendant. | Case No. 3:14-cv-1956-SI<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

      Plaintiff, Mr. Brandon Moye, representing himself, brings this action under the Fair Housing Act, as amended, 42 U.S.C. §§ 3601-3619 (Title VIII of the Civil Rights Act of 1968). Defendant, The Conifer Group, Inc. ("Conifer"), is represented by counsel.

      Mr. Moye alleges that he rented and lived in for approximately 14 years an apartment managed by Conifer. For much of this time, Mr. Moye lived in this apartment with his mother and son. Mr. Moye further alleges that it was Conifer's responsibility to maintain and keep in good order and repair certain items in his apartment, that several of those items were in need of repair, that Mr. Moye requested the local building manager (Defendant's employee) to make those repairs, that the local building manager did not timely make the requested and needed repairs in part because Mr. Moye is black, that the local building manager made needed repairs

PAGE 1 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

for other tenants who were white, and that Mr. Moye sustained injuries and other damages as a result of the failure of the local building manager to make the requested and needed repairs. Mr. Moye further alleges that the local building manager also refused to make the requested and needed repairs in part because Mr. Moye is disabled. Mr. Moye also contends that as a result of the injuries he sustained because Conifer failed to make the requested and needed repairs and in conjunction with an on-the-job injury, Mr. Moye lost his job, became unable to pay his rent, and was evicted. As a counterclaim, Conifer seeks an offset for money that Conifer contends Mr. Moye owes to Conifer.

After the parties waived their right to trial by jury, the Court held a one-day bench trial on July 18, 2016. Having weighed and evaluated all of the evidence in the same manner that it would instruct a jury to do and having fully considered the legal arguments of the parties, the Court states the applicable legal rules and makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a).

## APPLICABLE LEGAL RULES

Among other things, the Fair Housing Act, as amended, makes it unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provisions of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b).

The Fair Housing Act also makes it unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provisions of services or facilities in connection with such dwelling, because of a handicap of (A) that person . . . .

§ 3604(f)(2).[1]

An "aggrieved person" may bring a civil action not later than two years after the occurrence or the termination of an alleged discriminatory housing practice. § 3613(a)(1)(A). An "aggrieved person" is defined as any person who: "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." § 3602(i). If the court in a civil action finds that a discriminatory housing practice has occurred, the court may award to the plaintiff actual and punitive damages, including reasonable compensation for emotional distress and humiliation. *See* § 3613(c)(1).

The Fair Housing Act prohibits both disparate treatment and disparate impact forms of discrimination. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507 (2015); *Ave. 6E Invs., LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 503 (9th Cir. 2016). To establish a case of disparate treatment based on race, Plaintiff must show that: (1) he is a member of a protected class; (2) he was treated differently in the terms, conditions, or privileges of his rental relationship or in the provision of services or facilities to him as a tenant; and (3) the different treatment was, at least in part, because of his race. *See* 42 U.S.C. § 3604(b); *see also The Comm. Concerning Cmty. Improvements v. City of Modesto*, 583 F.3d 690, 711-12 (9th Cir. 2009) (describing the requirements of a prima facie case for disparate treatment under the FHA). To establish a case of disparate treatment based on handicap, Plaintiff must show that: (1) he has a handicap as defined in the statute; (2) he was treated differently in the terms,

---

[1] Under the Fair Housing Act, "handicap means, with respect to a person—(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance (as defined in section 802 of title 21)." 42 U.S.C. § 3602(h).

PAGE 3 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

conditions, or privileges of his rental relationship or in the provision of services or facilities to him as a tenant; and (3) the different treatment was, at least in part, because of his handicap. *See* 42 U.S.C. § 3604(f)(2)(A); *see also Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1156-58 (9th Cir. 2013) (describing the requirements of disparate treatment claims based on disability under the FHA).

Discrimination based on an intentional consideration of any protected category under the Fair Housing Act is illegal, even if defendant was not motivated by personal prejudice or animus. *Johnson v. Macy*, 145 F. Supp. 3d 907, 915 (C.D. Cal. 2015) (citing *Cmty Servs. Inc., v. Wind Gap Mun. Authority*, 421 F.3d 170, 177 (3d Cir. 2005) (to violate the FHA, "[t]he discriminatory purpose need not be malicious or invidious" and "it is a violation . . . to discriminate even if the motive was benign or paternalistic")). A plaintiff meets the evidentiary burden to prove intent by "simply produc[ing] direct or circumstantial evidence demonstrating that a discriminatory reason more likely that not motivated the defendant and that the defendant's actions adversely affected the plaintiff in some way." *Ave. 6E Invs.*, 818 F.3d at 504 (quotation marks and citation omitted). "A plaintiff does not have to prove that the discriminatory purpose was the sole purpose of the challenged action, but only that it was a 'motivating factor.'" *Id.* (quoting *Arce v. Douglas*, 793 F.3d 968, 977 (9th Cir. 2015)).

## FINDINGS OF FACT

The Court finds the following facts by a preponderance of the evidence.

1. Ken Leavens Properties, Inc. owns the Brigadoon Apartments, located at 4210 N.E. Cully Boulevard, Portland, Oregon (the "Apartment Building"). Conifer manages the Apartment Building. Ms. Ester Barstad is employed by Conifer as a portfolio manager and is responsible for authorizing repair and maintenance projects at the Apartment Building, except for certain large projects not relevant to this lawsuit. Ms. Barstad is Caucasian and white-skinned.

2.      From 1999 through 2013, Plaintiff, Brandon Moye, rented Apartment No. 11 at the Apartment Building. For most of this time, Plaintiff lived in this apartment with his mother, Carolyn Sibley, and his son, Brandon Moye, Jr. Mr. Moye, his mother, and his son are African-American and black-skinned.

3.      From 1995 through 2009, one of Mr. Moye's next-door neighbors in the Apartment Building was Colleen Kadderly. Ms. Kadderly lived in Apartment No. 12. Ms. Kadderly is Caucasian and white-skinned. At some point in time, a sizable "bubble" and hole developed in the ceiling in Ms. Kadderly's apartment. She reported the problem to building management, and the ceiling was repaired. At some point in time, there was rotting sub-flooring in Ms. Kadderly's bathroom. She reported the problem to building management, and the sub-floor was repaired. At some point in time, Ms. Kadderly needed new closet doors. She reported the problem to building management, and the closet doors were replaced.

4.      When Mr. Moye reported to Ms. Barstad that his apartment needed certain repairs and maintenance, she asked for Mr. Moye's permission to enter his apartment whenever she wanted or needed to enter to facilitate repair work. Mr. Moye declined to give his permission and instead asked Ms. Barstad to contact him in advance and to coordinate with him concerning repair times so that he could be present. According to Mr. Moye, Ms. Barstad replied that if she could not come in whenever she wanted to in order to make repairs, then she simply would not make any repairs. Ms. Barstad denied making this statement. After observing both witnesses at trial, the Court finds Mr. Moye's version to be more credible.

5.      At some point in 2013, Mr. Moye asked Ms. Barstad to repair a large "bubble" in the ceiling (also described as a "pregnant ceiling") and a nearby hole in the ceiling in Mr. Moye's kitchen. At trial, Mr. Moye presented photographs of that hole and a related stained area of the

PAGE 5 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

ceiling that were taken in 2013. Trial Exhibits 1, 2, and 3. The bubble and hole in the ceiling were not repaired.[2]

6.	At some point, there was rotting sub-flooring in Mr. Moye's bathroom. He reported the problem to Ms. Barstad, but the sub-floor was not repaired.

7.	At some point, Mr. Moye needed new closet doors. He reported the problem to Ms. Barstad, but it was not repaired until after Mr. Moye sustained an injury when he tripped over a closet sliding door that lacked a lower guide-rail.

8.	Conifer, through its portfolio manager, treated Mr. Moye differently than it treated other tenants (specifically, Ms. Kadderly) in the provision of services or facilities in connection with his apartment rental, at least in part because of Mr. Moye's race or skin color. This differential treatment caused Mr. Moye emotional distress and humiliation. The sum of fifteen thousand dollars ($15,000) is an amount that will fairly compensate Mr. Moye for his emotional distress and humiliation caused by Defendant's unlawful, racially discriminatory conduct.

9.	Mr. Moye did not sufficiently prove any other damages, including economic damages.

10.	Defendant did not discriminate against Mr. Moye based on disability, handicap, or any perceived or regarded disability or handicap.

11.	Beginning in July 2013, Mr. Moye failed to pay his rent. Conifer provided timely notice to Mr. Moye of his nonpayment of rent. Plaintiff failed to comply with the notice. On August 8, 2013, Defendant filed a Forcible Entry and Detainer action ("FED") in Multnomah County Circuit Court, styled *Conifer v. Moye*, Case No. 130013336E. Plaintiff's tenancy terminated in August 2013. Mr. Moye owes Conifer $3,219.27 for unpaid rent and other expenses due under Mr. Moye's lease agreement.

---

[2] Defendant presented evidence that another hole in Mr. Moye's ceiling was repaired in 2012, the previous year.

PAGE 6 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

12.     Plaintiff filed this lawsuit on December 8, 2014. In his original complaint, Mr. Moye alleged only that he was discriminated against in the provision of services or facilities to him as a tenant because of his race. ECF 2. On November 10, 2015, Mr. Moye amended his complaint to add a claim of disability discrimination. ECF 39.

13.     Conifer argues, as an affirmative defense, that "[t]he FED court's findings and judgment preclude plaintiff from pursuing" his claims in this action. ECF 25 at ¶ 12. Conifer states that under Or. Rev. Stat. § 90.390(1), "A landlord may not discriminate against a tenant in violation of local, state or federal law . . . ." Conifer also asserts that "[d]iscrimination is a defense to an FED action." ECF 25 at ¶ 9. According to Conifer's pleadings, Mr. Moye orally told the judge during the FED hearing that his neighbor in the Apartment Building was white and implied that she was treated more favorably by Conifer than Mr. Moye was treated. According to Conifer, "[t]he [FED] court found that plaintiff did not have a valid defense to the eviction and entered a judgment of restitution in favor of defendant. The court ordered plaintiff to vacate." ECF 25 at ¶ 11.

14.     At the federal trial, Defendant did not introduce a transcript from the FED hearing. Further, Defendant's Trial Exhibit 118 is Mr. Moye's Answer to Eviction filed in connection with the FED action. That form document asks whether the landlord failed to make repairs, and Mr. Moye described a number of the same unrepaired items that he described in the federal trial. There was no mention by Mr. Moye in his Answer to Eviction of any race discrimination (Defendant's Trial Exhibit 118), but race discrimination was not explicitly asked about in that form. Mr. Moye was not represented by counsel in his eviction proceeding. Ms. Barstad testified at the federal trial that "racial discrimination" was "brought up" at the FED hearing, but no further detail was provided by Defendant, and the Court already has questioned the credibility of

PAGE 7 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

this witness. Mr. Moye did not assert race discrimination against Defendant at the FED hearing, either as an affirmative defense or as an affirmative claim for relief.

## CONCLUSIONS OF LAW

The Court makes the following conclusions of law.

1. Defendant unlawfully discriminated against Mr. Moye in the provision of services or facilities in connection with Mr. Moye's apartment rental because of Mr. Moye's race or skin color.

2. Defendant did not discriminate against Mr. Moye based on disability, handicap, or any perceived or regarded disability or handicap.

3. The sum of fifteen thousand dollars ($15,000) is an amount that will fairly compensate Mr. Moye for his emotional distress and humiliation caused by Defendant's unlawful, racially discriminatory conduct.

4. Punitive damages are not warranted in this case.

5. Defendant is entitled to an offset in the amount of $3,219.27.

6. Regarding Conifer's affirmative defense of claim and issue preclusion:

    a. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In Oregon, the doctrine of claim preclusion prevents "a party who has litigated a claim against another from further litigation on that same claim on any ground or theory of relief that the party could have litigated in the first instance." *G.B. v. Morey*, 229 Or. App. 605, 608 (2009).

    b. "Issue preclusion arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding." *Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, 103 (1993). Claims and issues brought in an FED action may

PAGE 8 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

serve to bar a party's subsequent claims. *Perkins v. Conradi*, 153 Or. App. 273, 276, *opinion adhered to as modified on reconsideration*, 154 Or. App. 439 (1998) (holding that an adjudication that the plaintiff owned a specific part of a plot of land in an FED action precluded his later claim for declaratory judgment that he owned the entire plot). Issue preclusion bars parties from re-litigating issues when five conditions are met:

> 1. The issue in the two proceedings is identical. 2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding. 3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue. 4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding. 5. The prior proceeding was the type of proceeding to which this court will give preclusive effect.

*Nelson*, 318 Or. at 104 (citations omitted).

      c.      Under Oregon law, an FED action is a property claim grounded in equity. *See Schroeder v. Woody*, 166 Or. 93, 95 (1941). The action does not allow a party to seek damages. *See Lindsey v. Normet*, 405 U.S. 56, 63 (1972) (stating that in an action under Oregon's FED statute, "[t]he only award that a plaintiff may recover is restitution of possession"). When a landlord brings an FED action, the court has "[t]he objective of achieving rapid and peaceful settlement of possessory disputes." *Id.* at 72. Such speedy resolution of possessory disputes "is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession when his lease or rental agreement gives him the right to peaceful and undisturbed possession of the property." *Id.* at 73. In service of these goals, an FED action may not fully address issues relevant to damages.

      d.      Because Mr. Moye did not assert a claim of race discrimination against Defendant as part of the FED action, there is no claim preclusion that would bar Mr. Moye's assertion of such a claim in this case.

e.    Because the issue of race discrimination was not actually litigated and was not essential to a final decision on the merits in the FED action, there is no issue preclusion that would bar Mr. Moye's assertion of such a claim in this case.

## CONCLUSION

Plaintiff, Mr. Brandon Moye, is entitled to Judgment in his favor against Defendant, The Conifer Group, Inc., in the net amount of $11,780.73, which is $15,000 minus $3,219.27. A formal Judgment will be entered accordingly in a separate document.

**IT IS SO ORDERED**.

DATED this 25th day of July, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 10 – FINDINGS OF FACT AND CONCLUSIONS OF LAW